**TEXAS GAS TRANSMISSION CORP.,**
Appellant,

v.

Charles **KINSLOW** et al., Appellees.

Court of Appeals of Kentucky.

Dec. 11, 1970.

H. Hamilton Rice, Jr., Sandidge, Holbrook, Craig & Hager, Owensboro, Brents Dickinson, Jr., Richardson, Barrickman & Dickinson, Glasgow, for appellant.

J. Wood Vance, Jr., Glasgow, for appellees.

DAVIS, Commissioner.

Appellees, Charles and Roy Kinslow, obtained verdict and judgment against Texas Gas Transmission Corporation (Texas) for $7500 based on their claim that Texas permanently damaged a spring situated on appellees' farm, incident to laying a gas pipeline.

For reversal the appellant presents five charges of error: (1) Parol evidence was erroneously admitted; (2) the verdict is excessive; (3) the verdict is not sustained by the evidence; (4) the trial court erroneously refused to strike certain testimony; and (5) the appellant's motion for judgment n. o. v. should have been sustained.

The Kinslows owned a farm containing 172 acres, consisting of a tract of 117 acres and another of 55 acres. The two tracts were separated by a highway, and title to them was acquired separately but the Kinslow brothers operated the entire acreage as one economic unit.

According to evidence for the Kinslows, a never-failing spring, which produced a flow of pure water six inches in diameter, was located on the 117-acre tract quite near an adjoining upper farm owned by Carter Coomer. In the summer of 1967, Texas negotiated for rights of way required to install a gas pipeline from Park City to Glasgow. A portion of the line was to traverse the Kinslow 117-acre tract. The line proceeded onto the adjoining Coomer tract, and its course on the Coomer land passed a line extended from the spring at a distance of about 86 feet. The pipeline was laid upgrade from the spring.

The Kinslows executed and delivered two documents to Texas incident to the laying of the pipe and the required right of way. One of these was a Right of Way Agreement, dated June 26, 1967, and recited a monetary consideration of $17. The right of way granted was described as located on the 117-acre tract. Among other things, the agreement provided:

"The Grantee * * * agrees to pay any damage to crops, fences and timber which may arise from laying [etc] such pipelines."

A separate undated document, also on a printed form supplemented by handwritten insertions, was executed by the Kinslows. So far as can be learned from the record, this document captioned "Damage Release" was executed simultaneously with the Right of Way Agreement. Each document referred to "R/W No. 13." The damage release was framed in language of a receipt in these words and figures.

"Received of Texas Gas Transmission Corporation the sum of $153 in full payment and settlement of all damage caused or which may occur by the construction of a pipeline across that certain land in Barren County * * * on which a Right of Way was granted * * * and the exercise of any other rights granted under terms and conditions of said Right of Way Agreement.

"The undersigned hereby releases [Texas] from all liabilities and damages as aforesaid."

Immediately following the first quoted printed portion of the "Damage Release," there appears in longhand:

"Advance damages paid on 60 feet. R/W to be fertilized and reseeded. The above consideration dose (sic) not include any damage that might occur to a spring near the R/W. Farm tap to be installed when requested by grantor. Fences to be maintained at all times."

Over Texas' objection, the following questions and answers were admitted in Roy Kinslow's testimony:

"Q. Mr. Kinslow, prior to the fall of 1967 did you meet with a representative of the defendant [Texas] for the purpose of entering into an agreement or contract as to any potential damage that might be done to the spring?

A. Yes, sir.

Q. Will you state to the jury when you met, who you met with, and what the contract pertained to?

A. It was Mr. Wilson. He told us * * * he said that when that pipeline was going above the spring on Carter Coomer's land, he said, 'if I damage that spring in any way above it as I go through, that we will pay for the damage.' He said, 'we will pay for the damage to the spring, if you will sign that contract to go on through our place.'"

Of like import was the testimony of Charles Kinslow who testified in response to a similar inquiry, and over objection:

"A. That if we would sign for them to come through that he would protect our spring * * * pay for our spring * * * said, 'don't matter; any damage during the construction work.

Q. Did he say that included any damage above the spring on Mr. Coomer's property?

A. Yes, sir. That's what I was worried about."

For the Kinslows it was testified that on or about October 30 or 31, 1967, the ditch for the pipeline was dug on the Coomer land, and the spring virtually dried up forthwith. Texas offered countervailing evidence as to the spring's flow. Nobody could present any conclusive reason for the spring's diminution in flow (if such diminution occurred).

Texas vigorously argues that the Kinslows' evidence respecting the oral agreement to pay compensation for damage to the spring violated the parol-evidence rule. Texas reasons that the Right of Way Agreement coupled with the Damage Release constituted the memorial of the entire contract, so that no preliminary or prior agreements could be shown to vary their terms.

■ It is beyond cavil that Texas and the Kinslows could have made a legal oral agreement binding Texas to save harmless the Kinslows against damage to the spring. The Kinslows swore that such an agreement was made, and that it was the prime consideration for their execution of the Right of Way Agreement. Certainly, the Damage Release, in specifically excluding damages to the spring from its impact, lends strong support to the testimony of the Kinslows. In short, there is nothing in the Right of Way Agreement to support the idea that that document purported to be a memorial of anything insofar as the spring was concerned, or as to any activity on the Coomer land. The basic rule applicable is thus stated in 30 Am.Jur.2d, Evidence, Section 1049, page 184:

"An exception to the parol evidence rule, which is similar in many respects to that of the doctrine of partial integration, is known as the 'doctrine of collateral contract.' Under this doctrine, a prior or contemporaneous oral contract which is independent of, collateral to, and not inconsistent with, the written contract, may be proved by parol evidence. A collateral oral agreement is allowed to be proved because it is a thing apart from the one represented by the writing."

■ Moreover, the true consideration for a written contract, vis-a-vis that recited in the document, is generally admissible despite the parol-evidence rule, unless the recital of consideration is "contractual." Cf. 30 Am.Jur.2d, Evidence, Sections 1056–1057, pp. 192–198. See also KRS 371.030 which provides that the consideration of any writing may be impeached or denied by *pleading*. See also Com., Dept. of Highways v. Schmehr, Ky., 388 S.W.2d 131, and cases compiled in 8A Ky. Digest, Evidence, ⬳419.

Thus, it was proper for the court to permit the testimony concerning the oral agreement of Texas to indemnify appellees for damage to the spring. The jury was

required by the court's instruction to believe that the oral agreement had been made as a predicate to imposing liability on Texas. No objection was made to that instruction in that respect, nor would any such objection have availed.

■ Throughout the trial Texas objected to appellees' testimony concerning values because all of their witnesses conceded that they had considered only the before and after values of the 117-acre tract, rather than casting their testimony within the framework of valuing both tracts as one economic unit. Texas aptly relies on Com., Dept. of Highways v. Dennis, Ky., 409 S.W.2d 292, and Jones v. Com., Dept. of Highways, Ky., 413 S.W. 2d 65, as supporting its charge of error in this respect. The error was material in view of the fact that the extent and nature of the water supply on the 55-acre tract necessarily was a substantial factor in the overall value, both before and after, of the single economic unit.

This view of the case makes it unnecessary to decide, and the court does not decide, whether the verdict was excessive. Neither is it appropriate to treat the claimed error that the verdict was not sustained by sufficient evidence.

There is no merit in the claim that judgment n. o. v. should have been entered for Texas, in light of what has been written.

■ Texas contends that the measure of damage should have been the "cost of cure" rather than difference in market value. In other words, Texas argues that the damage, if any, was temporary, not permanent. But, the evidence for appellees warranted the inference that the spring was permanently impaired. There was no showing that the spring could be "cured." The cost of constructing a pond or digging a well could not reasonably be regarded as a proper reparation for permanent damage to the spring. It follows that the court correctly instructed the jury to measure the damages by the yardstick of diminution in market value.

■ Neither is there merit in Texas' contention that the valuation testimony of the Kinslows was incompetent under the rule announced in Com., Dept. of Highways v. Fister, Ky., 373 S.W.2d 720. Each of the Kinslows professed to be familiar with market values of farms in the vicinity. The mere fact that they mentioned no comparable sales did not destroy their competence as witnesses. There was no effort on cross-examination to demonstrate the inaccuracy of their claims of knowledge of market values.

■ It is appropriate to observe that in event of another trial witnesses should not be permitted to express views as to the effect on the plans of the Kinslows to embark on Grade A dairying. Only to the extent, if any, that the alleged impairment of the spring affected the potential highest and best uses of the farm and impaired the market value by reason of it, valuation testimony will be proper.

Since the issue of liability has been fairly tried, if a new trial is had, only the issue of damages will be submitted.

The judgment is reversed for proceedings consistent with the opinion.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, OSBORNE, REED, PALMORE and STEINFELD, JJ., concur.